**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,

        Plaintiff,

v.

D-1  Corey Toney
      a/k/a "Green Eyes," "B-Mo,"
D-2  Edward Tavorn
      a/k/a "Chico," "Cheeks,"
D-3  Andre Chattam
      a/k/a "Big Man,"
D-4  Kevin Pearson
      a/k/a "BMG Kev,"
D-5  Sontez Wells
      a/k/a "Skittles,"
D-6  George Eubanks
      a/k/a "Big G,"
D-7  James Bowens
      a/k/a "Lucky,"

        Defendants.

_____/

Case No. 17-20184

Honorable Judith E. Levy

Violations:
      18 U.S.C. § 1962(d)
      18 U.S.C. § 1959(a)
      18 U.S.C. § 924(j)
      18 U.S.C. § 924(c)
      21 U.S.C. § 841(a)(1)
      21 U.S.C. § 846
      18 U.S.C. § 2

## SECOND SUPERSEDING INDICTMENT

The Grand Jury Charges:

## General Allegations

1.    At various times relevant to this Second Superseding Indictment,

defendants COREY TONEY, EDWARD TAVORN, ANDRE CHATTAM, KEVIN

PEARSON, SONTEZ WELLS, GEORGE EUBANKS, JAMES BOWENS, and

others, both known and unknown to the Grand Jury, were members and associates of a criminal organization known as "Young and Scandalous," also known as "Young and Skantless," or "YNS." YNS is a street gang based in the Brightmoor neighborhood of northwest Detroit, Michigan.

2.     YNS has purposefully developed a reputation for ruthless violence. By committing violent acts including those alleged herein, and by posting numerous intimidating photographs and videos to social media, the gang has become known as the most dangerous group in Brightmoor and one of the most dangerous in the city of Detroit.

3.     The members of YNS are united in their practice of enriching themselves through any means, without regard to legality. YNS members regularly engage in crimes including drug trafficking and robbery in order to obtain money and property. YNS members are able to commit such crimes with relative impunity because of their membership in a gang with the violent reputation of YNS. Their status as YNS members allows them to engage in illegal money making activities while protecting them from interference and attack from others, and deters witnesses from cooperating with law enforcement against them.

4.     As a result of YNS's violent domination of the neighborhood, the residents of Brightmoor live in fear of shootings, robberies, arson, and other violence.  Members of the community have been forced to endure such violence, as

well as the regular use of neighborhood businesses and residences as drug markets, because the gang will not tolerate any interference with its members' unlawful sources of revenue or threats to its dominance in Brightmoor. YNS members also travel to other locations outside of Michigan, including West Virginia, to sell controlled substances.

**COUNT ONE**

*(18 U.S.C. § 1962(d) — RICO Conspiracy)*

D-1   Corey Toney
D-2   Edward Tavorn
D-3   Andre Chattam
D-4   Kevin Pearson
D-6   George Eubanks
D-7   James Bowens

**The Racketeering Enterprise**

1.      Paragraphs One through Four of the General Allegations are re-alleged and fully incorporated.

2.      At all times relevant to this Count of the Second Superseding Indictment, in the Eastern District of Michigan, YNS, including its leadership, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals, associated in fact, which is engaged in, and the activities of which affected, interstate and foreign commerce. YNS constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the

3

enterprise. At various times relevant to this Second Superseding Indictment, COREY TONEY, EDWARD TAVORN, ANDRE CHATTAM, KEVIN PEARSON, GEORGE EUBANKS, JAMES BOWENS, and others, were members and associates of YNS.

### Purposes of the Enterprise

3. It was the purpose of YNS to cultivate a reputation for violence and intimidation in order to facilitate the successful commission of crimes by YNS members and associates. In particular:

a. YNS sought to acquire and maintain control and authority over the Brightmoor neighborhood of Detroit;

b. YNS sought to intimidate, injure, and kill rival drug dealers in order to eliminate competition and perpetuate the domination of the Brightmoor drug market by YNS members and associates, and others they deemed as acceptable;

c. YNS sought to establish a reputation for extreme violence to discourage anyone from disturbing or disrupting the illicit money-making efforts of YNS members and associates;

d. YNS sought to instill fear in the community in order to discourage cooperation with police and deter victims and witnesses from reporting YNS-related crime in Brightmoor, and other locations; and

e.      YNS sought to use the gang's violent reputation to enrich its members and associates by allowing them to commit crimes in Brightmoor, and other locations, including drug trafficking and robbery, with reduced risk of retaliation, arrest, or prosecution.

**Manner, Means, and Methods of the Enterprise**

4.      The manner and means used by the enterprise to further the goals of the enterprise and achieve its purposes include, but are not limited to, the following:

a.      Members of the enterprise and their associates used acts of violence, including murder, attempted murder, assault, robbery, and arson, to intimidate rivals and the public;

b.      Members of the enterprise and their associates used robberies, including armed home invasions, to obtain firearms.  Such firearms were distributed within the enterprise for use in future acts of violence and for the protection of YNS drug dealing;

c.      Members of the enterprise and their associates used social media sites including Facebook, Instagram, and YouTube to publicize their violent activities and their ownership of firearms, including handguns and AK-47 style rifles with extended magazines;

d.      Members of the enterprise and their associates also used social media sites to display gang symbols, marks, insignia, hand signs, and colors, in order to promote awareness of the gang and its membership; and

e.      Members of the enterprise organized themselves according to a hierarchy in which a member's status depended upon his age, length of membership in the enterprise, and the quality and quantity of violent actions he had committed in connection with the enterprise.

### The Racketeering Conspiracy

5.      Beginning on a date unknown, but starting no later than the year 2005, and continuing to the date of this Second Superseding Indictment, in the Eastern District of Michigan and elsewhere,

COREY TONEY
EDWARD TAVORN
ANDRE CHATTAM
KEVIN PEARSON
GEORGE EUBANKS
JAMES BOWENS

and others known and unknown to the Grand Jury, being persons employed by and associated with YNS, which enterprise is described more fully in Paragraphs One through Four of the General Allegations and in Paragraphs One through Four of this Count, which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18, United States Code,

6

Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5), consisting of multiple:

    a.    Acts involving murder, in violation of Michigan Compiled Laws, Sections 750.316, 750.317, 750.83, 750.157a(a), and 767.39;

    b.    Acts involving robbery, in violation of Michigan Compiled Laws, Sections 750.529, 750.530, 750.157a(a), and 767.39;

    c.    Acts involving arson, in violation of Michigan Compiled Laws, Sections 750.72, 750.73, 750.157a(a), and 767.39;

    d.    Offenses involving dealing in controlled substances, in violation of Title 21, United States Code, Sections 841 and 846; and

    e.    Acts indictable under Title 18, United States Code, Sections 1512(a)(2)(C), 1512(b)(1), and 1512(c)(2) (relating to tampering with a witness, victim, or an informant).

6.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

In furtherance of the conspiracy, and to affect the object and purposes thereof, the defendants, and others known and unknown to the grand jury, committed various overt acts, including but not limited to the following:

1)      On or about October 20, 2006, TAVORN possessed a loaded handgun in a vehicle with other YNS members and associates in the Brightmoor neighborhood of Detroit.

2)      On or about May 5, 2010, CHATTAM possessed a .357 caliber handgun near Fenkell and Westbrook, in the Brightmoor neighborhood of Detroit.

3)      On or about May 14, 2010 TAVORN, TONEY, along with other YNS members/associates, possessed a shotgun, ecstasy, and cocaine base inside a residence at 15335 Westbrook, in the Brightmoor neighborhood of Detroit.

4)      On or about July 12, 2010, TONEY, along with other YNS members and associates, possessed with intent to distribute marijuana and approximately 300 grams of cocaine in a residence at 15421 Westbrook, in the Brightmoor neighborhood of Detroit.

5)      On or about September 9, 2010, a YNS member sprayed carburetor cleaner on and then set fire to merchandise within the Marathon gas station, located at 21704 Fenkell, in the Brightmoor neighborhood of Detroit.

6)      On or about August 21, 2013, TONEY and others were gambling in the Brightmoor neighborhood of Detroit.  When police approached them, TONEY fled the scene and struck an officer in the head with his hand.

7)      On or about August 22, 2013, PEARSON, CHATTAM, and Sontez Wells attempted to rob T.W. at a gas station on the corner of 7 Mile and Shiawasseee, near the Brightmoor neighborhood of Detroit, and during this robbery, PEARSON, CHATTAM, and Wells killed T.W.

8)      On or about December 2, 2013, PEARSON participated in a Facebook conversation "Sträwbérry Nutty," in which PEARSON posted a photo showing himself and two other BMG/YNS members, all of them armed with handguns, and where PEARSON stated: "I dont give a fuck bitch dats da same pic homicide got and im still out here bitch im not scared of no snitch or police ..im poppin date nigga n i got yall adress sogo head n snitch bitch it wont stop nothing at all u scary hoe" and "Lol i want em to see cause dey in it too then and i bet one of yall get popped first cause u kno what im bout you dumb bitch n i wish yall would snitch my brothas no where da fuck yall at[.]"

9)      In or about 2014, TAVORN and PEARSON distributed narcotics to a customer in the Brightmoor neighborhood of Detroit.

10)     In or about 2015, TAVORN and PEARSON distributed narcotics to a customer in the Brightmoor neighborhood of Detroit.

11) On or about February 5, 2015, TAVORN posted the following text to Instagram for the purpose of intimidating a rival: "Bitch we already dropped one of yall over there rip too him they know who died over there on they block west side niggas came threw lol…"

12) On or about April 29, 2015, PEARSON participated in a Facebook conversation with "Rodney Dukes," in which they discussed entry into YNS.

13) On or about April 29, 2015, ANDRE CHATTAM participated in a Facebook conversation with "BrightMo Ant," in which they discussed entry into YNS.

14) On or about July 4, 2015, YNS members robbed and killed E.B. at the Victory Inn, located at 17729 Telegraph, in the Brightmoor neighborhood of Detroit.

15) On or about July 10, 2015, PEARSON possessed a .45 caliber handgun near the intersection of Grand River and Chapel, in the Brightmoor neighborhood of Detroit.

16) On or about July 28, 2015, a YNS member placed a jail call to PEARSON, TAVORN, and EUBANKS, in which they discussed the July 4, 2015 Victory Inn homicide, the YNS enterprise, and retaliation against YNS members cooperating with the police.

17)   On or about January 5, 2016, a photograph was posted on TONEY's Instagram page showing another BMG/YNS member/associate and the accompanying text states: "Y-N-S THE MOB I BEEN IN IT Since the first day."

18)   On or about March 27, 2016, a person posted to YouTube a publicly accessible video entitled "Glo-Gang-Member YNS Cheeks – Mobbin with Da Mobb." In the video, TAVORN and other YNS members describe the existence of YNS, assert control by YNS over locations including the Marathon gas station in Brightmoor, threaten violent retaliation against rivals, and display numerous firearms.

19)   On or about March 27, 2016, CHATTAM and other YNS members or associates participated in multiple shootings in the Brightmoor neighborhood, including a non-fatal shooting at 15935 West 7 Mile, in Detroit, and the homicide of A.M. at 16821 Riverview, in the Brightmoor neighborhood of Detroit.

20)   On or about April 10, 2016, TAVORN participated in an Instagram conversation in which he stated, "Bitch we gone kill everything you livr fot bitch" and "These niggas be tripping we rich fuck nigga don't wanna run in to glo."

21)   On or about May 23, 2016, three YNS members robbed D.M. and T.S. at gunpoint on Beaverland Street, in the Brightmoor neighborhood of Detroit. The robbery was authorized by TAVORN and was conducted for the purpose of

11

obtaining numerous firearms that the perpetrators believed to be present at the location.

22)   On or about July 8, 2016, TONEY possessed with intent to distribute approximately 30.62 grams of cocaine, and TAVORN and TONEY possessed ammunition and YNS gang paraphernalia, at 16867 Pinehurst, Detroit, Michigan, near the Brightmoor neighborhood of Detroit.

23)   On or about May 12, 2017, EUBANKS spoke with TAVORN about raising money for TAVORN'S pending legal case by EUBANKS leaving town to sell narcotics.

24)   In August 2017, EUBANKS distributed narcotics to a customer in Mingo County, West Virginia.

25)   In August 2017, BOWENS distributed narcotics to a customer in Mingo County, West Virginia.

26)   In August 2017, EUBANKS caused another person to wire narcotics proceeds from Mingo County, West Virginia, to a recipient in Detroit, Michigan.

27)   In August 2017, BOWENS caused another person to wire narcotics proceeds from Mingo County, West Virginia, to a recipient in Detroit, Michigan.

28)   In August 2017, BOWENS threatened S.W. and A.M. to prevent them from "snitching" about the narcotics sales in West Virginia.

29)     On or about August 9, 2017, TAVORN placed a jail call to EUBANKS and BOWENS, in which they discussed each of their relative positions within the YNS enterprise, and the distribution of narcotics in West Virginia and distributing some of the narcotics proceeds to TAVORN.

30)     On or about August 14, 2017, TAVORN placed a jail call to EUBANKS and BOWENS, in which they discussed the distribution of narcotics in West Virginia and distributing some of the narcotics proceeds to TAVORN.

31)     On or about August 21, 2017, TAVORN placed a jail call to EUBANKS, in which they discussed the distribution of narcotics in West Virginia.

32)     On or about August 21, 2017, BOWENS used a firearm to force S.W. to rent a vehicle for BOWENS and other YNS members and associates, so that BOWENS and other YNS members and associates could use the vehicle to transport narcotics from Detroit, Michigan, to Mingo County, West Virginia.

33)     From on or about August 26, 2017 to on or about September 1, 2017, EUBANKS and BOWENS possessed with intent to distribute approximately 550 grams of cocaine base, and EUBANKS and BOWENS possessed one Smith & Wesson Model 457 handgun and one Ruger P94 handgun, in Mingo County, West Virginia.

## Notice of Acts with Enhanced Sentencing

1.      On or about August 22, 2013, in the Eastern District of Michigan, enterprise members ANDRE CHATTAM and KEVIN PEARSON, aiding and abetting others known and unknown to the grand jury, did commit an act involving armed robbery, that is, in the course of committing a larceny of any money and property that may be the subject of larceny did use force and violence against T.W., and assaulted and put T.W. in fear, and, in the course of engaging in that conduct, did possess a dangerous weapon and an article used and fashioned in a manner to lead any person present to reasonably believe the article was a dangerous weapon, and represented orally and otherwise that they were in possession of a dangerous weapon, all in violation of Michigan Compiled Laws, Sections 750.529 and 750.530; and CHATTAM and PEARSON did also commit assault with intent to rob and steal, that is, being armed with a dangerous weapon, and any article used and fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, did assault T.W. with intent to rob and steal, all in violation of Michigan Compiled Laws, Section 750.89.

2.      On or about August 22, 2013, in the Eastern District of Michigan, enterprise members ANDRE CHATTAM and KEVIN PEARSON, aiding and abetting others known and unknown to the grand jury, did commit an act involving murder, that is, the murder of T.W., committed in the perpetration of, and attempt to

14

perpetrate robbery and larceny of any kind, all in violation of Michigan Compiled Laws, Sections 750.316(1)(b) and 767.39.

3.     On or about March 27, 2016, in the Eastern District of Michigan, enterprise member ANDRE CHATTAM, aiding and abetting others known and unknown to the grand jury, did commit an act involving murder, that is, assaulting E.M. with intent to commit murder, all in violation of Michigan Compiled Laws, Sections 750.83 and 767.39.

4.     On or about March 27, 2016, in the Eastern District of Michigan, enterprise member ANDRE CHATTAM, aiding and abetting others known and unknown to the grand jury in the commission of the murder of A.M., did commit an act involving second degree murder, that is, act in wanton and willful disregard of the likelihood that the natural tendency of said act would cause death and great bodily, all in violation of Michigan Compiled Laws, Sections 750.317 and 767.39.

5.     On or about March 27, 2016, in the Eastern District of Michigan, enterprise member ANDRE CHATTAM, aiding and abetting others known and unknown to the grand jury, did commit an act involving murder, that is, assaulting M.C. and K.K. with intent to commit murder, all in violation of Michigan Compiled Laws, Sections 750.83 and 767.39.

6.     From in or around May 2017 through on or about September 1, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the

Southern District of West Virginia, EDWARD TAVORN, GEORGE EUBANKS, and JAMES BOWENS, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other and with persons both known and unknown to the grand jury, to commit an offense against the United States, that is, to possess with the intent to distribute and to distribute 280 grams or more of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

*(18 U.S.C. §§ 1959(a)(1); 2 — Murder in Aid of Racketeering)*

D-3    Andre Chattam
D-4    Kevin Pearson
D-5    Sontez Wells

1.    At all times relevant to this Second Superseding Indictment, there existed an enterprise, YNS as more fully described in Paragraphs One through Four of the General Allegations and in Paragraphs One through Six of Count One of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein. YNS, including its leadership, members and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.   The

16

enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.     At all times relevant to this Second Superseding Indictment, the above-described enterprise, YNS, through its members and associates, engaged in racketeering activity as defined by Sections 1959(b)(1) and 1961(1) of Title 18, United States Code, namely acts involving murder, arson, and robbery in violation of Michigan State Law; acts involving kidnapping and extortion in violation of West Virginia State Law; offenses involving dealing in controlled substances indictable under Title 21, United States Code, Sections 841 and 846; and offenses indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant).

3.     On or about August 22, 2013, in the Eastern District of Michigan, Southern Division, ANDRE CHATTAM, KEVIN PEARSON, and SONTEZ WELLS, aided and abetted by each other, did, for the purpose of maintaining and increasing position in YNS, an enterprise engaged in racketeering activity, knowingly and unlawfully murder T.W.; in violation of Michigan Compiled Laws, Sections 750.316(1)(b) and 767.39.

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

17

## COUNT THREE

*(18 U.S.C. §§ 924(c); 924(j); 2 — Use and Carry a Firearm During
and in Relation to a Crime of Violence Causing Death)*

| | |
|---|---|
| D-3 | Andre Chattam |
| D-4 | Kevin Pearson |
| D-5 | Sontez Wells |

1. Paragraphs One through Four of the General Allegations and Paragraphs One through Six of Count One of this Second Superseding Indictment are re-alleged herein as if fully incorporated in this Count.

2. On or about August 22, 2013, in the Eastern District of Michigan, Southern Division, ANDRE CHATTAM, KEVIN PEARSON, and SONTEZ WELLS, aided and abetted by each other, did knowingly, intentionally, and unlawfully use and carry a firearm, said firearm was discharged, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, that is, murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), as charged in Count Two of this Second Superseding Indictment, and did, in the course of such use and carry, cause the death of T.W. through the use of such firearm, such killing being a murder as defined by 18 U.S.C. § 1111, all in violation of Title 18, United States Code, Sections 924(c); 924(j); and 2.

## COUNT FOUR

*(21 U.S.C. §841(a)(1) — Possession With Intent to
Distribute a Controlled Substance)*

D-1   Corey Toney

On or about July 8, 2016, in the Eastern District of Michigan, Southern Division, COREY TONEY did knowingly and intentionally possess with the intent to distribute a measurable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Section 841(b)(1)(C).

## COUNT FIVE

*(18 U.S.C. § 922(g)(1) — Felon in Possession of a Firearm)*

D-2   Edward Tavorn

On or about June 13, 2015, in the Eastern District of Michigan, Southern Division, EDWARD TAVORN, after having previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year (felony offense), did knowingly and unlawfully possess a firearm, said firearm having previously traveled in interstate and/or foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SIX

*(21 U.S.C. § 846 — Conspiracy to Possess with the Intent to Distribute and to Distribute a Controlled Substance)*

D-2   Edward Tavorn
D-6   George Eubanks
D-7   James Bowens

From in or around May 2017 through on or about September 1, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the Southern District of West Virginia, EDWARD TAVORN, GEORGE EUBANKS, and JAMES BOWENS, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other and with persons both known and unknown to the grand jury, to commit an offense against the United States, that is, to possess with the intent to distribute and to distribute 280 grams or more of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

## COUNT SEVEN

*(21 U.S.C. §841(a)(1) — Possession With Intent to Distribute a Controlled Substance)*

D-6   George Eubanks
D-7   James Bowens

From on or about August 23, 2017 through on or about September 1, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the

20

Southern District of West Virginia, GEORGE EUBANKS and JAMES BOWENS did knowingly and intentionally possess with the intent to distribute 280 grams or more of cocaine base (crack cocaine), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## COUNT EIGHT

*(18 U.S.C. § 924(c); 2 — Possessing a Firearm in
Furtherance of a Drug Trafficking Crime)*

D-6   George Eubanks
D-7   James Bowens

Between on or about August 21, 2017 through on or about August 31, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the Southern District of West Virginia, GEORGE EUBANKS and JAMES BOWENS, aiding and abetted by each other, did knowingly possess a firearm, that is, a Smith & Wesson Model 457 handgun and a Ruger P94 handgun, in furtherance of a drug trafficking crime for which they may be prosecuted in a court of the United States, that is, the drug trafficking crimes alleged in Count Six and Count Seven of this Second Superseding Indictment, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

21

## COUNT NINE

*(18 U.S.C. §§ 1959(a)(1); 2 — Kidnapping in Aid of Racketeering)*

D-7   James Bowens

1.      Paragraphs One and Two of Count Two are re-alleged herein as if fully incorporated in this Count.

2.      On or about August 21, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the Southern District of West Virginia, JAMES BOWENS and others, known and unknown to the grand jury, aided and abetted by each other, did, for the purpose of maintaining and increasing position in YNS, an enterprise engaged in racketeering activity, knowingly and unlawfully kidnap S.W., in violation of West Virginia Code Annotated, Section 61-2-14a.

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT TEN

*(18 U.S.C. § 924(c)(1)(A)(iii) — Use and Carry of a Firearm During, and in Relation to, a Crime of Violence)*

D-7   James Bowens

On or about August 21, 2017, in the Eastern District of Michigan, Southern Division, and elsewhere, including the Southern District of West Virginia, JAMES BOWENS, did knowingly, intentionally, and unlawfully carry and use a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, kidnapping in aid of racketeering, as alleged in Count Nine, and said firearm was brandished and discharged, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

## FORFEITURE ALLEGATIONS

### RICO Forfeiture

The allegations contained in Count One of this Second Superseding Indictment are hereby repeated, re-alleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Federal Rule of Criminal Procedure Rule 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One of this Second Superseding Indictment.

As a result of committing the offense charged in Count One of this Superseding Indictment, the defendants, COREY TONEY, EDWARD TAVORN, ANDRE CHATTAM, KEVIN PEARSON, GEORE EUBANKS, and JAMES BOWENS:

1.    Have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1); and

2.    Have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United

24

States pursuant to Title 18, United States Code, Section 1963(a)(3).

The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (a)(3), include but are not limited to, a sum that represents the gross proceeds received by the defendants pursuant to their racketeering activities as charged in Count One of the Second Superseding Indictment during the relevant time period charged in the Second Superseding Indictment and all interests and proceeds traceable thereto.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

The above-named defendants, and each of them, are jointly and severally liable for

the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

This is a true bill.

*s/ Grand Jury Foreperson*
Grand Jury Foreperson

Matthew Schneider
United States Attorney

*s/ Christopher Graveline*
Christopher Graveline
Chief, Violent and Organized Crime Unit
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9155
christopher.graveline2@usdoj.gov

*s/ Jerome F. Gorgon Jr.*
Jerome F. Gorgon Jr.
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9676
jerome.gorgon@usdoj.gov

*s/ Conor Mulroe*
Conor Mulroe
Trial Attorney, U.S. Department of Justice
1301 New York Ave NW
Washington, DC 20005
(202) 514-3601
conor.mulroe@usdoj.gov

Dated:  January 24, 2018

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>17-20184 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes    ☒ No | AUSA's Initials: |

**Case Title:** USA v. Corey Toney, et. al.

**County where offense occurred :** Wayne

**Check One:**    ☒Felony        ☐Misdemeanor        ▷☐Petty

____Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number: _____ ]
_✓_Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 17-20184 _____    **Judge:** Levy _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-6  George Eubanks | 21 USC § 846 | |
| D-7  James Bowens | 21 USC §841(a)(1)<br>18 USC § 924(c); 2<br>18 USC §§ 1959(a)(1); 2 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 24, 2018
Date

JEROME F. GORGON
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9676
Fax:    313-226-5464
E-Mail address: jerome.gorgon@usdoj.gov
Attorney Bar #:

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.